**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Katherine Williams, | ) | No. CV-11-2523-PHX-SMM |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| Carolyn W. Colvin, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Katherine G. Williams seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her application for supplemental security income under the Social Security Act. (Doc. 1.[1]) Williams asks the Court to vacate the Commissioner's denial. (Doc. 14.) The Commissioner filed her Opposition Brief (Doc. 19), and Williams filed her Reply (Doc. 20). Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on harmful legal error, the Commissioner's decision will be affirmed.

## BACKGROUND

Williams was born in 1965 and has a high school equivalency degree. (Tr. 41.) She

---

[1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on May 29, 2012. (See Doc. 11.)

1  trained and was employed as a certified nursing assistant. (Tr. 41-42.) Williams has a
2  significant history of methamphetamine drug abuse that lasted until 2007 or 2008. (Tr. 11;
3  403.) Williams' application for supplemental social security income is based on alleged
4  impairments due to her diabetes, which began at the age of 18. (Tr. 42.) Williams primarily
5  complains of numbness and pain in her feet. (Id.)

6        On May 29, 2008, Williams applied for social security disability insurance benefits
7  and for supplemental social security income. (Tr. 9.) In both applications, Williams alleged
8  that she became disabled as of November 23, 2001 (otherwise referred to as "disability onset
9  date"). (Tr. 9.) On August 8, 2008, at the request of the State agency, Williams underwent
10 a consultative physical examination with Keith Cunningham, M.D, board certified in internal
11 medicine, who submitted his expert report. On August 21, 2008, Vivienne Kattapong, M.D.,
12 a non-examining state agency consultant also reviewed the evidence of record and submitted
13 her expert report. On August 22, 2008, Williams' disability application was denied initially,
14 and upon reconsideration on January 9, 2009. (Tr. 61-62, 77-80.) Williams sought further
15 review before an ALJ. (Tr. 81-82.) On September 8, 2010, the ALJ held a hearing at which
16 Williams and vocational expert Mark J. Kelman appeared and testified. (Tr. 9.) At the
17 hearing, Williams amended her alleged disability onset date to June 5, 2008. (Id.) Due to
18 this amendment, Williams conceded that she was voluntarily dismissing her application for
19 disability insurance benefits. (Tr. 16; Doc. 14 at 2 n.1.) Counsel for Williams commented
20 that the new June 5, 2008 disability onset date would render testimony regarding her drug
21 abuse immaterial since Williams had ceased abusing drugs in April 2008. (Tr. 41.) The
22 remaining issue for the ALJ was Williams' application for supplemental social security
23 income based on disability. (Tr. 9.) On September 22, 2010, the ALJ found that Williams
24 was not disabled. (Tr. 9-16.) This decision became the Commissioner's final decision when
25 the Social Security Appeals Council denied review. (Tr. 1-8.)

26                               **STANDARD OF REVIEW**

27       Supplemental security income benefits are for the "needy disabled," and the applicant
28 is not required to have worked to receive these benefits. See Whaley v. Schweiker, 663 F.2d

1  871, 873 (9th Cir. 1981). The pertinent statute, 42 U.S.C. § 1382c, provides benefits for
2  qualified individuals who are aged, blind or disabled. Id. The purpose of the program is to
3  assure that the recipient's income is maintained at a level viewed by Congress as the
4  minimum necessary for the subsistence of that individual. Id. In this case, Williams claims
5  benefits due to disability.

6        The district court reviews only those issues raised by the party challenging the ALJ's
7  decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). When reviewing a
8  Social Security appeal, the Commissioner's decision must be affirmed if it is supported by
9  substantial evidence and she applied the correct legal standards. See Batson v. Comm'r of
10 Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030,
11 1035 (9th Cir. 2003). When reviewing the Commissioner's factual determinations, acting
12 through the ALJ, this Court will affirm if there is substantial evidence supporting those
13 determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater,
14 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less
15 than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir.
16 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is
17 relevant evidence which a reasonable person might accept as adequate to support a
18 conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of
19 Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support
20 either affirming or reversing the Commissioner's conclusion, the Court may not substitute
21 its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v.
22 Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

23       The ALJ is responsible for determining credibility, resolving conflicts in medical
24 testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v.
25 Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are
26 reviewed *de novo*, although deference is owed to a reasonable construction of the applicable
27 statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir.
28 2000).

## COMMISSIONER'S DISABILITY EVALUATION PROCESS

To qualify for Social Security disability benefits, Williams must show that she suffers from a "medically determinable physical or mental impairment" that prevents her from performing her prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or [] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520.[2] At step one, the ALJ determines if the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, then she is not disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or combinations of impairments that significantly limit the claimant's physical or mental ability to do basic work activities and are thus "severe" within the meaning of the regulation. See id. § 404.1520(c). At the third step, the ALJ evaluates if the claimant's impairment meets or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of Regulation No. 404. If yes, and the impairment meets the requirements for duration under 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant fails to meet or equal the criteria or fails the duration requirement, the ALJ's analysis moves to step four. See 20 C.F.R. § 404.1520(e). Under step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the continued ability of the claimant to perform physical or mental work activities despite her impairment or combination of impairments.

---

[2]Because regulations for disability determinations under Titles II and XVI of the Social Security Act, governing Disability Insurance Benefits and Supplemental Security Income benefits respectively, mirror each other, citations to regulations will be to Disability Insurance Benefits regulations without citation to parallel Supplemental Security Income benefits.

- 4 -

1  See id. The ALJ also determines if the claimant's RFC allows her to perform past relevant
2  work. See id. § 404.1520(f). If yes, the claimant is not disabled. If not, the analysis
3  proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the
4  claimant is not disabled by presenting evidence that the claimant retains sufficient RFC to
5  adjust to perform other jobs that exist in significant numbers either in the region where the
6  claimant lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.
7  § 404.1520(g).

**DISCUSSION**

**A.  ALJ Rationale**

The ALJ found that Williams had not engaged in substantial gainful activity since June 5, 2008, the amended disability onset date. (Tr. 11.) At step two, Williams had the following "severe" impairments: type II diabetes mellitus, diabetic retinopathy, and peripheral neuropathy. (Tr. 11.) Williams had the following RFC: sedentary work;[3] limited to standing for 20 minutes at a time before needing to sit; limited to sitting for 30 minutes at a time before needing to stand; requiring a sit/stand option in the workplace; and able to walk a mile before needing to rest. (Tr. 12.) At step four, Williams was unable to perform any of her past relevant work (Tr. 30), but at step five, there were jobs existing in significant numbers in the national economy that Williams could perform. (Tr. 15.) The ALJ rejected Williams' subjective symptom testimony that she could not work. (Tr. 12-14.) The ALJ credited the vocational expert's testimony that there were jobs that Williams could perform. (Tr. 15-16.) Therefore, Williams was not disabled from June 5, 2008, through the date of decision. (Tr. 16.)

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

### B. Opinion Evidence

Williams argues that the ALJ erred by failing to properly weigh the reports submitted by her treating doctor, Dr. Warren Tripp, who had been treating her since November 2008. (Doc. 14 at 11-13.) On July 29, 2010, Dr. Tripp provided a medical source statement evaluating Williams' RFC. (Tr. 543-44.) Dr. Tripp indicated that Williams' pain, fatigue, and nausea severely limited her ability to sustain work. (Id.) He opined that in an eight-hour work day, Williams can sit less than two hours, stand/walk less than two hours, and lift/carry less than ten pounds. (Id.) Williams contends that Dr. Tripp's opinion was entitled to controlling weight, not the limited weight assigned by the ALJ. (Doc. 14 at 11-13.)

The ALJ found conflicting medical opinion evidence in this case. (Tr. 11-16.) Based on all the evidence, the ALJ determined that Williams could perform sedentary work with limitations, standing for 20 minutes at a time before needing to sit, sitting for 30 minutes before needing to stand, requiring a sit/stand option in the workplace, and able to walk a mile before needing to rest. (Tr. 12.) The ALJ disagreed with Dr. Tripp's RFC evaluation, stating that Dr. Tripp's opinion was not supported by "the great weight of the evidence of record." (Tr. 14.) The ALJ also noted that Dr. Tripp did not attempt to establish how long Williams' symptoms and associated limitations had been present or how long they would continue. (Id.)

Generally, the Commissioner gives more weight to opinions from treating doctors since these doctors are likely to be the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairments. See 20 C.F.R. § 404.1527(c). So long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion will be given controlling weight. Id.; see Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (stating that the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons).

In support of his finding that Williams' RFC allowed her to work at a sedentary level, with adjustments for a sit/stand option, the ALJ cited the August 21, 2008 expert report from

- 6 -

1 Dr. Vivienne Kattapong, a non-examining state agency consultant. (Tr. 14.) Dr. Kattapong
2 evaluated Williams' medical impairments and determined that she is not only able to sustain
3 work at the sedentary level, but also at the light exertional level. (Tr. 14, citing Tr. 416-23.)
4 Dr. Kattapong indicated that her RFC assessment was consistent with a previous expert
5 report made by an examining state agency consultant. (Tr. 422.)

6 The previous RFC assessment referenced by Dr. Kattapong was discussed by the
7 ALJ, as follows:

> At the request of the State agency, the claimant underwent a consultative physical examination on August 8, 2008. The examiner, Keith Cunningham, M.D., who is board certified in internal medicine, found the claimant's gait to be normal. The claimant's extremities showed no edema. She had normal motor strength and range of motion. Dr. Cunningham diagnosed the claimant with diabetes with peripheral neuropathy, a history of diabetic retinopathy and right vitreous bleed, and methamphetamine abuse. In his functional assessment, the doctor assigned to the claimant no exertional limitation, except for a lifting/carrying restriction of 10 pounds frequently and 50 pounds occasionally.

(Tr. 12.)

At issue is whether the ALJ properly discounted the opinion of Williams' treating doctor. The Court finds that the ALJ applied proper legal standards and, based on the entire record, there is substantial evidence to support his conclusion discounting the opinion of Dr. Tripp. See Batson, 359 F.3d at 1193. The ALJ provided his specific and legitimate reason for discounting Dr. Tripp's opinion; it was inconsistent with the submitted evidence of record. Dr. Tripp's RFC assessment was inconsistent with the RFC assessment of both agency doctors who believed that Williams could at least perform at a sedentary level with a sit/stand option at work. (Tr. 12-14.) It is the ALJ who is responsible for determining credibility and resolving conflicts in the medical testimony. See Benton, 331 F.3d at 1040. The ALJ need not give controlling weight to an opinion that is inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2)-(c)(5).

Based on Dr. Cunningham's physical examination, Cunningham noted the lack of swelling in Williams' legs, that she had a normal gait, and concluded that she had no exertional limitations. (Tr. 404, 12.) After reviewing the submitted evidence, Dr. Kattapong

- 7 -

1 indicated that she believed Williams could walk, stand and sit for 6-hours during an 8-hour
2 workday. (Tr. 416-23.) Dr. Tripp's July 2010 RFC concluded that Williams' pain and
3 fatigue caused an inability for her to sustain work. (Tr. 543-44.) However, even Dr. Tripp
4 consistently noted that Williams' diabetic pain was reasonably controlled with medication
5 with no side effects. (Tr. 494, 496, 502, 505, 507, 513, 517.) Here, substantial evidence
6 reasonably supports the ALJ's RFC assessment regarding Williams' ability to perform
7 sedentary work. See Batson, 359 F.3d at 1193.

### C. Subjective Pain Testimony

9 The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's
10 subjective testimony. "First, the ALJ must determine whether the claimant has presented
11 objective medical evidence of an underlying impairment 'which could reasonably be
12 expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d
13 1028, 1036 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)
14 (en banc)). If the claimant meets this first test, and there is no evidence of malingering, then
15 the ALJ "can reject the claimant's testimony about the severity of her symptoms only by
16 offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d
17 1273, 1282 (9th Cir. 1996); see also Carmickle v. Comm. of Soc. Sec. Admin., 533 F.3d
18 1155, 1160 (9th Cir. 2008) (stating that an ALJ may discount the claimant's subjective
19 statements with clear and convincing reasons supported by substantial evidence). An ALJ
20 may consider at least the following factors when weighing the claimant's credibility:
21 claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or
22 between her testimony and her conduct, claimant's daily activities, her work record, and
23 testimony from physicians and third parties concerning the nature, severity, and effect of the
24 symptoms of which claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th
25 Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

26 The ALJ summarized Williams' symptom testimony as follows:

27 The claimant testified that she has been unable to work primarily due to
diabetes and its complications. She stated that her diabetes was first diagnosed
28 at the age of 18. She has pain and numbness in both feet caused by peripheral

- 8 -

>neuropathy. She also has a loss of vision in the right eye. The claimant indicated that her vision is blurred and she gets headaches if she tries to read. She also complained of loss of energy possibly due to hypertension. She acknowledged her past substance abuse, but indicated that she last used methamphetamines in 2007. The claimant testified that she could not stand for more than 20 minutes at a time and could sit up to 30 minutes at a time, but needed to elevate her feet to hip level to be most comfortable while sitting. She estimated that she could not lift more than 10 pounds and needed to nap approximately 2.5 hours out of each 8-hour workday because of pain.

(Tr. 13.) The ALJ credited some of Williams' testimony and included some physical limitations that Williams testified to as part of his RFC assessment. The ALJ found that Williams was able to perform the exertional requirements of sedentary work, but limited her to a sit/stand option in the workplace. (Tr. 12.) She was limited to standing for 20 minutes at a time before needing to sit and limited to sitting for 30 minutes before needing to stand. However, the ALJ also found that some of Williams' statements concerning the "intensity, persistence and limiting effects" of her symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (Tr. 13.)

For instance, the ALJ did not credit the extent of Williams' vision impairment, finding that it was not at listing level severity, and that she had done reasonably well following her eye surgery. (Tr. 12-13.) An impairment that can reasonably be alleviated by treatment cannot serve as a basis for a finding of disability. See Warre v. Comm. of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). Here, at a February 2010 follow-up to surgery on her right eye in December 2009, Williams' treating ophthalmologist, Dr. Park, reported that she was doing well, and that her vision had improved to 20/70 in the right eye, and 20/40 in the left eye. (Tr. 479.) Williams' testimony is in contradiction with the medical record, which is a sufficient basis for rejecting her subjective testimony. See Carmickle, 533 F.3d at 1161.

The ALJ also did not credit Williams' testimony that pain and numbness in her feet prevented her from working. (Tr. 13.) The ALJ found that Williams was able to ambulate independently, that her motor strength was intact, that she had no swelling of her lower extremities, and no indication of any negative side effects from her pain medication regimen. (Tr. 13.) Social Security regulations require that an ALJ consider objective medical

evidence when determining a claimant's credibility. See 20 C.F.R. § 416.929(c)(4). When examined by Dr. Cunningham in August 2008, although Williams had decreased sensation to pinprick and touch from the mid-tibias distally, she had normal gait, motor strength, and range of motion. (Tr. 404); see Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Further, although Williams testified that she had level "7" pain on average (Tr. 49), Dr. Tripp consistently reported that her diabetic pain was reasonably controlled with medication, without side effects. (Tr. 494, 496, 502, 505, 507, 513, 517.) The ALJ thus found that Plaintiff's allegations regarding the severity and persistence of her pain was inconsistent with the medical record. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (stating that an ALJ may consider many factors in weighing a claimant's credibility including testimony by the claimant that appears less than candid).

Based on the ALJ's discussion of the record evidence, the Court finds that the ALJ provided "specific, clear and convincing reasons" for discounting Williams' subjective pain testimony to the extent that it conflicted with the ALJ's RFC assessment.

**D. Vocational Expert Testimony**

Finally, Williams argues that the ALJ failed to identify and present all of her physical limitations to the vocational expert prior to the vocational expert testifying about whether Williams could perform any jobs in the local and national economy. (Doc. 14 at 17-20.)

At the hearing, in questioning the vocational expert, the ALJ set forth Williams' RFC and her limitations as follows:

> Q: I'm going to ask you a question of an individual same age, education, and job experience as the claimant's with the following limitations: The individual would need to have a job with a sit/stand option where the individual's only able to stand for 20 minutes at a time before the individual would have to sit down, and the individual would be limited to sitting for 30 minutes at a time before the individual would have to stand up, and the individual would be limited to lifting 10 pounds, and the individual is able to walk up to one mile at a time. Are there any jobs with a sit/stand option that are available to such an individual?

(Tr. 55.) Williams contends that the limitations the ALJ presented to the vocational expert

1 did not include her vision-related limitations or a strict limitation only to sedentary unskilled
2 work. (Doc. 14 at 17-20.)

3       The Court has already discussed the ALJ's finding regarding the medical treatment
4 Williams received regarding her vision. Williams underwent surgery on her right eye in
5 December 2009, and at a February 2010 follow-up, Williams' treating ophthalmologist Dr.
6 Park reported that she was doing well and that her vision had improved to 20/70 in the right
7 eye, and 20/40 in the left eye. (Tr. 12, 479.) Based on this treatment record the ALJ did not
8 include a vision limitation in his RFC assessment. The Court finds that there is substantial
9 evidence supporting the ALJ's non-inclusion of a vision limitation in his RFC assessment.
10 See Howard, 341 F.3d at 1011.

11       Regarding the ALJ's alleged lack of presentation to the vocational expert that
12 Williams' was limited to sedentary unskilled work, the Court finds that the ALJ's
13 presentation to the vocational expert reasonably and adequately set forth the exertion level
14 for jobs that Williams would be qualified to perform. The ALJ's limitation of the sit/stand
15 option with its accompanying time limitations made Williams' exertion level clear to the
16 vocational expert.

17       In response to the ALJ's presentation of Williams' RFC, the vocational expert
18 testified that there would be jobs in the local and national economies that Williams could
19 perform. The vocational expert testified to the following jobs:

20-26 > The first would be that of a telemarketing representative. There would be no typing requirements for that. In terms of numbers, there would be at least 2,000 statewide, and in excess of 100,000 nationally. Headsets are readily available, so if one wants to sit or stand, they can. They are tethered by the headset, so they literally can't walk away. In terms of the DOT number on that, it's 299.357-014. Second one would be that of an office helper, for which there would be approximately 1,000 jobs statewide, and approximately 60,000 on the national basis, and the DOT number on that one would be 239.567-010, and the last one would be that of a parking lot cashier, fuel island courtesy booth, those types of environments as opposed to the retail cashier where one is standing for extended periods. The DOT number's 211.462-010, and in terms of numbers it would be at least 800 statewide, and in excess of 100,000 plus on a national basis.

27 (Tr. 55-56.) Based on this testimony, the ALJ found that Williams could perform jobs in the
28 local and national economy. (Tr. 15-16.) The Court finds that there is substantial evidence

- 11 -

supporting the ALJ's finding that Williams is not disabled because she retains sufficient RFC to adjust to perform the jobs testified to by the vocational expert that exist in significant numbers both in the local and national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).

## CONCLUSION

After a thorough review of the record, the Court finds that the ALJ applied the correct legal standards in his evaluation. The ALJ's decision demonstrates that he carefully considered Williams' application and the supporting evidence. The ALJ identified substantial evidence supporting each of his findings.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision denying Williams' application for supplemental security income benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of Defendant and terminate this action.

DATED this 26th day of April, 2013.

Stephen M. McNamee
Senior United States District Judge